IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDI BROWN, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) Case No. 19-cv-5639 |
| MAC'S CONVENIENCE STORES LLC d/b/a CIRCLE K, | ) ) ) JURY TRIAL DEMANDED |
| *Defendant.* | ) ) ) ) |

## COMPLAINT

Plaintiff Judi Brown ("Ms. Brown" or "Plaintiff"), by her attorneys, complains of Defendant Mac's Convenience Stores LLC d/b/a/ Circle K ("Circle K") as follows:

## INTRODUCTION

1. This is a civil rights complaint for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Illinois Human Rights Act, 775 ILCS 5/101 *et seq.* (the "IHRA"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

2. From May 2016 to June 2017, Plaintiff Judi Brown was employed as a cashier at Circle K. During this time, the store manager and other Circle K employees harassed Ms. Brown, who is an African-American transgender woman, based on her sex, gender-related identity, and race. Among other things, a Circle K manager asked her offensive and sexually explicit questions about her romantic partners, sexual and reproductive anatomy, and her plans for surgical gender transition. Her manager also refused to update company documents to reflect Ms. Brown's chosen name, and sometimes used male pronouns to refer to her in company documents. One employee

1

refused to use Ms. Brown's chosen name or to use female pronouns to refer to her, and used offensive slurs such as "man in a dress." In addition, Ms. Brown was forced to endure a racially hostile work environment. A Circle K manager used the highly offensive racial slur "n****r" to refer to African-American customers, and requested that employees closely watch African-American customers while they shopped. Another employee called Ms. Brown "a n****r." One of Ms. Brown's managers made an offensive comment to Ms. Brown about the way "you people do your hair."

3. When Ms. Brown reported this persistent harassment and discrimination, Circle K retaliated against her by denying her a promised promotion, over-scrutinizing her work, and ultimately firing her. Circle K meanwhile promoted and gave good workplace reviews to employees who had the same or worse workplace performance than Ms. Brown had.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper under 28 U.S.C. § 1391 because all of the conduct complained of occurred within this District.

## PARTIES

6. Plaintiff Brown is an adult resident of the State of Illinois. From May 2016 through June 2017, Ms. Brown was employed by Circle K at its store located at 398 South Bolingbrook Avenue, Bolingbrook, Illinois 60440 ("Bolingbrook Store"). Subsequent to her employment at Circle K, Ms. Brown changed her legal name to Judi Brown and updated the gender markers on her state identification documents to female.

7. Defendant Mac's Convenience Stores LLC d/b/a/ Circle K is a Canadian multinational corporation with headquarters in Montreal, Quebec. Defendant is registered in the State of Delaware. Defendant owns and operates stores in this District and has a regional headquarters in Lisle, Illinois.

## PROCEDURAL BACKGROUND

8. Plaintiff Judi Brown exhausted her administrative remedies at the Equal Employment Opportunity Commission and Illinois Department of Human Rights.

9. The U.S. Equal Employment Opportunity Commission ("EEOC") found reasonable cause to believe violations of Title VII occurred. The EEOC issued Ms. Brown a Notice of Right to Sue, which Ms. Brown received on May 28, 2019. A true and correct copy of that notification is attached as **Exhibit A**.

10. The Illinois Department of Human Rights ("IDHR") issued Ms. Brown a Notice of Substantial Evidence, which Ms. Brown received on June 25, 2019. A true and correct copy of that Notice is attached as **Exhibit B**.

11. This Complaint is being filed within 90 days of Ms. Brown's receipt of the EEOC Notice of Right to Sue and the IDHR's Notice of Substantial Evidence.

## ALLEGATIONS OF FACT

12. In May 2016, Circle K hired Ms. Brown as a cashier in its Bolingbrook Store. In her role as a cashier, Ms. Brown was responsible for ringing up orders, providing customer service, and handling daily operations such as stocking, pricing, and cleaning.

13. At the time she was hired, Ms. Brown went by the name Brandi, used female pronouns, and wore traditionally feminine attire and hairstyles to work. Circle K assigned Ms. Brown a nametag with the name Brandi, but other company documents, including the receipts

generated by the cash register, used Ms. Brown's former male name. Additionally, Circle K included Ms. Brown's former male name on each of her performance reviews and coaching documents on the top of each page. Store manager Wendy Delli wrote these reviews and coaching documents; in more than one of these documents, she described Ms. Brown by using male pronouns and her former male name.

14. Ms. Brown found Circle K's use of her former male name and incorrect pronouns ("misgendering") offensive and hurtful. Additionally, by continuing to use her former name in company documents that could be seen by customers, Circle K placed Ms. Brown at risk of being "outed" as transgender and subjected to discrimination, harassment or violence by customers. At the beginning of her employment at Circle K, Ms. Brown asked Ms. Delli to correct all company documents to reflect the name Brandi. Ms. Delli did not do so.

*Ms. Brown is Harassed by Store Manager Delli*

15. As early as her first week of work, Ms. Delli began regularly harassing her because she is a transgender woman. For example, Ms. Delli asked Ms. Brown about the nature of her genitals (*i.e.*, whether Ms. Brown had what Ms. Delli considered male genitals) in a conversation that had begun as normal small talk. Ms. Delli also asked Ms. Brown whether she planned to have genital surgery as part of her medical transition, and whether Ms. Brown had a menstrual period. Ms. Delli did not ask similarly invasive questions about other employees' bodies, reproductive organs, or plans for surgery. Ms. Brown indicated she was uncomfortable with these questions and told Ms. Delli that she would not answer questions about her private areas.

16. Ms. Delli also repeatedly asked Ms. Brown inappropriate questions about her romantic relationships and sexual orientation, and made other offensive sexual comments to Ms. Brown. For example, Ms. Delli asked if Ms. Brown wanted to have sex with certain male

4

customers. On several occasions, Ms. Delli suggested that Ms. Brown go on dates with customers in exchange for money. Another time, Ms. Delli told Ms. Brown that she could "imagine the sex" Ms. Brown was having with her boyfriend and asked for intimate details about Ms. Brown and her boyfriend's sexual relationship. To Ms. Brown's knowledge, Ms. Delli did not ask other employees similar questions or make similar comments about other employees.

17. Ms. Delli's repeated invasive questions and inappropriate comments were offensive and degrading to Ms. Brown. Ms. Delli sometimes made these comments in front of customers, which Ms. Brown found particularly humiliating. Ms. Brown asked Ms. Delli to stop asking questions about her private areas and expressed her discomfort with Ms. Delli's inappropriate comments. In or around June or July 2016, Ms. Brown pulled Ms. Delli aside to reiterate that her questions and comments were wholly unprofessional and offensive, and firmly requested that Ms. Delli refrain from such questions and comments in the future. Nonetheless, Ms. Delli persisted asking Ms. Brown similar offensive questions and making similar offensive comments.

18. After Ms. Brown complained, Ms. Delli began scheduling her for long shifts during peak store hours by herself. Previously, two employees were usually scheduled for the peak store hours. Ms. Brown frequently worked these shifts alone over a course of months.

19. In or around January 2016, Ms. Brown began hormone therapy as part of her medical transition. Ms. Brown informed Ms. Delli that she had begun treatment and presented documents regarding side effects and the need to miss work for periodic medical appointments. Following this conversation, Ms. Delli asked Ms. Brown many invasive and offensive personal questions about her body, including asking Ms. Brown when she would start growing breasts.

20. In addition, Ms. Delli created a racially hostile working environment. Ms. Delli referred to African-American customers as "n****rs." Ms. Delli also regularly told employees to

5

watch African-American customers closely because she thought African-American customers would steal.

*Circle K Refuses to Promote Ms. Brown Following Her Complaints of Discrimination*

21. In late August 2016, Ms. Brown told Ms. Delli that her long solo shifts during the busiest store hours—shifts other employees were not assigned—were stressful for her. In response to her concerns, Ms. Delli assured Ms. Brown that she would be given a promotion to assistant manager when the position opened up.

22. In December 2016, Ms. Brown began training to become an assistant manager. As part of this training she was required to perform the work of an assistant manager, including ordering stock, learning inventory, and completing audits. Ms. Brown received only positive feedback about her performance in the role of assistant manager. Ms. Delli informed Ms. Brown that the market manager, Cindy Vasquez, would need to give the final approval of the promotion, but that there was no concern about whether or not Ms. Vasquez would do so.

23. In January 2017, Ms. Vasquez visited the Bolingbrook Store. She told Ms. Brown that she liked "how you people do your hair." Ms. Brown was offended by the racist and derogatory comment. An African-American co-worker overheard the remark and agreed that it was racist and derogatory. Ms. Brown immediately complained to Ms. Delli about Ms. Vasquez's remark and the offense she felt. Ms. Delli told Ms. Brown to disregard the comment because that was just Ms. Vasquez's personality. A few days after this complaint, Ms. Delli informed Ms. Brown that Circle K was not promoting anyone to fill the position at that time. No performance concerns were given as the basis for the denial of the promotion.

24. A few weeks later, Circle K chose, instead, to promote Demetrios Koutsopanagos, a non-transgender white male who had only recently started working at Circle K.

6

25. In or around February 2017, the assistant manager position again became open. Ms. Delli told Ms. Brown that she wanted her and another co-worker, Elizabeth Marlowe, to share the role of assistant manager, as they were the two best employees. In or around March 2017, Circle K promoted Ms. Marlowe, a non-transgender white woman to assistant manager and did not promote Ms. Brown. Ms. Marlowe was hired after Ms. Brown, and Ms. Brown had trained her into her roles as cashier and assistant manager. Ms. Delli told Ms. Brown that Ms. Vasquez had made the decision to promote only Ms. Marlowe. Ms. Delli also told Ms. Brown that she had not been promoted because she did not have her own car and instead shared a car with her mother. However, two previous assistant managers and another co-worker who was later offered the assistant manager position did not own cars. Despite Circle K refusing to promote Ms. Brown, Ms. Delli asked her to continue performing assistant manager duties. Ms. Brown declined to do so without a formal promotion and the associated pay raise to match these additional duties.

26. Around this time, Ms. Delli told Ms. Marlowe that Circle K was trying to get rid of Ms. Brown and advised her not to interact with Ms. Brown. Separately, Eboni Harvey, an assistant manager at the Bolingbrook Store, also warned Ms. Brown that Circle K wanted to get rid of her because she complained too much about being discriminated against.

27. Soon after Ms. Brown was passed over for the promotion, Ms. Delli began to scrutinize her performance. For example, Ms. Delli began to text her saying she was late, even when Ms. Brown was already at work or when she had permission to be late. On March 24, 2017, Ms. Brown received a written warning that she had repeatedly been late to work. However, Ms. Brown's attendance record was similar to or better than that of her co-workers who did not receive such written or verbal warnings. Her attendance record during this period was also similar to her attendance record during previous months.

*Ms. Brown Harassed by Co-Workers, but Circle K Does Nothing*

28. In February 2017, Circle K re-hired Hannah Stage, a non-transgender white woman, to work at the Bolingbrook Store. Ms. Stage immediately began harassing Ms. Brown. Ms. Stage expressed disdain for Ms. Brown being a transgender woman, and refused to call Ms. Brown "Brandi" or to refer to her using female pronouns. Ms. Stage would also out Ms. Brown as transgender to customers and inform long-term customers of Ms. Brown's former male name. Ms. Brown was distressed and offended by Ms. Stage's actions. She also feared that being outed to customers as a transgender woman would expose her to discrimination or violence.

29. Ms. Brown complained to Ms. Delli that Ms. Stage was harassing her based on her sex and gender identity during Ms. Stage's first week back at Circle K. But Circle K refused to stop the harassment.

30. On one occasion, Ms. Stage commented to Ms. Marlowe that she did not understand why "*he*" (referring to Ms. Brown) was wearing a skirt and stated that "*he*" should be fired for wearing women's clothing to work. On multiple occasions, Ms. Stage told Ms. Brown that she was a "prostitute" and a "man in a dress." Ms. Brown felt humiliated and degraded by these insults.

31. Additionally, Ms. Stage accessed Ms. Brown's company locker and threw Ms. Brown's personal belongings, such as her hair brush, snacks, and cosmetics, into the garbage approximately once per week. Ms. Brown had to purchase replacements for the items Ms. Stage threw out. This behavior continued until Ms. Brown stopped storing her purse in the employee locker room in order to prevent Ms. Stage from accessing her belongings. Ms. Marlowe overheard Ms. Stage telling Ms. Delli that she was going to throw "*his*" stuff in the garbage. Once, Ms. Delli told Ms. Brown that Ms. Stage had called her at home to ask permission to throw away Ms. Brown's belongings. Ms. Brown complained many times to Ms. Delli about Ms. Stage's behavior.

Ms. Delli responded that Ms. Brown needed to get used to people not liking her because many people do not approve of her "lifestyle" or "how you people live." Ms. Delli took no action to reprimand or correct Ms. Stage's behavior.

32. Ms. Stage also caused a racially hostile work environment. Once, Ms. Stage called Ms. Brown a "stupid fucking n****r." Additionally, she often referred to Ms. Brown as a "n****r" when speaking about her to other co-workers. On one occasion, she called a customer of Latin-American descent a "wetback." Ms. Brown was deeply offended by Ms. Stage's repeated use of racial slurs. Ms. Brown reported Ms. Stage's numerous offensive comments about her race and gender identity to Ms. Delli, but Ms. Delli dismissed her concerns.

33. Ms. Stage's harassment became so intolerable that Ms. Brown asked Ms. Delli to arrange the schedule so that she would not overlap with Ms. Stage and be subject to more harassment. Ms. Delli did not do so.

34. In April 2017, a co-worker, Joy Jacobs, told Ms. Brown that she was "a man dressed like a woman" and that he hated her hair, and then threated to beat her up. Ms. Brown was terrified by Mr. Jacob's threats. Ms. Brown called and texted Ms. Delli about Mr. Jacob's threats and explained that she was afraid he was serious. Circle K did not terminate Mr. Jacobs after these threats.

35. Because Ms. Delli refused to address or correct the harassment and discrimination Ms. Brown was experiencing on a near-constant basis, Ms. Brown decided to voice her complaints to higher management. Ms. Brown called James, the district manager who supervised Ms. Vasquez, and left a voicemail stating her name, store location, contact information, and a brief explanation of the reason for her call. When Ms. Brown did not hear a response from James, she called Circle K's Human Resources hotline. Ms. Brown left a voicemail stating her name, store

9

location, contact information, and a brief explanation of the reason for her call. However, she never received a response to either voice message. Circle K fired Ms. Brown mere weeks after she made these calls.

*Circle K Fires Ms. Brown for Attending Pride Parade*

36. In spring of 2017, Ms. Brown experienced complications from her hormone therapy. These complications required Ms. Brown to miss days of work due to illness. Ms. Brown followed the procedure to call off work for each of these missed days, including presenting doctor's notes to Ms. Delli. Additionally, when Ms. Brown had scheduled doctor's visits for bloodwork and other appointments related to hormone therapy, she would inform management ahead of time so that she would not be scheduled for those days. Ms. Delli was aware of the reason for Ms. Brown's absences.

37. On May 30, 2017, Ms. Delli presented Ms. Brown with a "Decision Day" form, which stated that due to her absences and tardiness, she would be required to reaffirm her desire to work at Circle K. Ms. Delli told Ms. Brown that due to this "D-Day" form, Ms. Brown would be terminated for any subsequent tardiness or absence. Ms. Brown told Ms. Delli that she felt she was being retaliated against because she complained about the race and gender identity harassment. Ms. Brown pointed out that co-workers who had worse attendance records than she did—including employees who missed shifts without calling off—had not received a D-Day form. Ms. Delli still gave Ms. Brown the D-Day form.

38. The following day, Ms. Delli placed an additional written warning in Ms. Brown's file for "bad audit and lottery short" on one occasion earlier in the month. Circle K did not give Ms. Brown the warning, notify Ms. Brown that this warning had been placed in her file, or even tell her that her drawer had been found to be short.

39. During June 2017, Ms. Brown frequently expressed to her co-workers that she was excited to be performing in the upcoming Pride Parade in Chicago. All of her colleagues, including Ms. Delli, were aware of Ms. Brown's plans to perform at the Pride Parade on the last Sunday of June 2017.

40. The week of the Pride Parade, Ms. Delli sent the work schedule a week late. On information and belief, employees are not accountable for being unable to work a shift when the schedule is posted late. Ms. Delli scheduled Ms. Brown to work from 2 p.m. to 9 p.m. on Saturday and from 11 a.m. to 6 p.m. on Sunday, the day of the Pride Parade. This schedule was unusual both because it was sent late and because Ms. Brown typically worked from Monday through Friday, from 7 a.m. to 4 p.m. Ms. Brown had not worked on a weekend in months.

41. Upon receiving the schedule, Ms. Brown promptly informed Ms. Delli that she was unavailable to work on Sunday, both by text message and in person. On the morning of the Pride Parade, Ms. Brown followed protocol and called the Bolingbrook Store to give further notice that she was not available to work her shift that day.

42. Circle K terminated Ms. Brown the following day, but did not notify her. Ms. Brown discovered she had been terminated when she showed up to work and found she could not clock in. Ms. Delli informed Ms. Brown over the phone that she should leave because she was no longer employed by Circle K.

43. The Circle K discharge form completed by Ms. Delli states that Ms. Brown was fired because "Brandon Brandi called on Sunday saying not coming in for her shift as she was going to the Gay Pride Parade. Informed she would be terminated if she did not come in when scheduled due to being short-handed." However, Ms. Brown had given ample notice that she would not be attending the irregularly scheduled Sunday shift and, indeed, Ms. Delli knew that she

would be unavailable when Ms. Delli created the schedule. The Bolingbrook Store was not, in fact, short-handed that day. Further, Ms. Delli never told Ms. Brown that she would be terminated if she failed to come in to work that Sunday. In reality, Circle K fired Ms. Brown because she is an African-American transgender woman and because she complained about sexual, gender-based, and race-based harassment and discrimination.

## COUNT I

### Title VII—Discrimination and Retaliation on the Basis of Sex

44. Ms. Brown realleges the foregoing paragraphs as though fully set forth herein.

45. Ms. Brown is a member of a protected class on the basis of sex. She is a transgender woman.

46. Ms. Brown, in all respects, was performing her job in a manner that was consistent with Circle K's legitimate business expectations.

47. Circle K discriminated against Ms. Brown as described above, including but not limited to harassing her, subjecting her to a hostile work environment, denying her promotions and firing her.

48. Circle K also retaliated against Ms. Brown as described above.

49. Circle K's actions were taken with a willful and wanton disregard of Ms. Brown's rights under Title VII.

50. As a direct and proximate result of said unlawful employment practices and in disregard of Ms. Brown's rights and sensibilities, Ms. Brown has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## COUNT II

**IHRA—Discrimination and Retaliation on the Basis of Sex and Gender-Related Identity**

51. Ms. Brown realleges the foregoing paragraphs as though fully set forth herein.

52. Ms. Brown is a member of a protected class on the basis of sex and gender-related identity. She is a transgender woman.

53. Ms. Brown, in all respects, was performing her job in a manner that was consistent with Circle K's legitimate business expectations.

54. Circle K discriminated against Ms. Brown as described above, including but not limited to harassing her, subjecting her to a hostile work environment, denying her promotions and firing her.

55. Circle K also retaliated against Ms. Brown as described above.

56. Circle K's actions were taken with a willful and wanton disregard of Ms. Brown's rights under the IHRA.

57. As a direct and proximate result of said unlawful employment practices and in disregard of Ms. Brown's rights and sensibilities, Ms. Brown has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## COUNT III

**Section 1981—Discrimination and Retaliation on the Basis of Race**

58. Ms. Brown realleges the foregoing paragraphs as though fully set forth herein.

59. Ms. Brown is a member of a protected class on the basis of race. She is an African-American woman.

60. Ms. Brown, in all respects, was performing her job in a manner that was consistent with Circle K's legitimate business expectations.

61. Circle K discriminated against Ms. Brown as described above, including but not limited to harassing her, subjecting her to a hostile work environment, denying her promotions and firing her.

62. Circle K also retaliated against Ms. Brown as described above.

63. Circle K's actions were taken with a willful and wanton disregard of Ms. Brown's rights under Section 1981.

64. As a direct and proximate result of said unlawful employment practices and in disregard of Ms. Brown's rights and sensibilities, Ms. Brown has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brown prays that this Court:

A. Enter judgment in favor of Ms. Brown and against the Defendant for violation of Ms. Brown's Rights under Title VII, the IHRA, and Section 1981;

B. Declare that the actions of the Defendant constituted unlawful discrimination;

C. Award Ms. Brown compensatory damages, including, but not limited to, lost wages and benefits, in such amount as will reasonably compensate her for her losses, and damages for emotional distress;

D. Award Ms. Brown punitive damages in such amount as the Court deems proper;

E. Award Ms. Brown her costs, attorneys' fees, and non-taxable expenses in this action; and

F. Grant Ms. Brown such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff Judi Brown hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: August 21, 2019                              Respectfully submitted,

                                                    /s/ Carolyn M. Wald
                                                    *One of Plaintiff's Attorneys*

Randall D. Schmidt                     John A. Knight
Edwin F. Mandel Legal Aid Clinic of the   Karen A. Sheley
   University of Chicago Law School     Carolyn M. Wald
6020 S. University Ave.                Katie G. Reineck
Chicago, IL 60637                      Roger Baldwin Foundation of ACLU, Inc.
773-702-9611                           150 N. Michigan Ave., Ste. 600
                                       Chicago, IL 60601
                                       312-201-9740

15